# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

Civil action docket No.: _____

_____

)
**JOSEPH FOLEY, GEORGE-ARTHUR** )
**ROBINSON, MARK SCHOFIELD,** )
**KENNETH TREMBLAY and** )
**JOHN RITCHIE,** )
)
                    **Plaintiffs,** )
)
        **v.** )
)
**COMMONWEALTH OF** )
**MASSACHUSETTS, JOHN** )
**AUERBACH in his official capacity** )
**as Commissioner of the Department** )
**of Public Health, ABDULLAH** )
**REHAYEM, in his official capacity** )
**as Director of the Office of Emergency** )
**Medical Services, and RICHARD** )
**HEIDLAGE, in his official capacity as** )
**Acting Chief Administrative Magistrate** )
**of the Division of Administrative** )
**Law Appeals,** )
)
                    **Defendants.** )
_____)

## COMPLAINT: DECLARATORY JUDGEMENT AND
## PRELIMINARY AND PERMANENT INJUNCTIVE RELEF
### (42 U.S.C. § 1983 – Due Process Clause of the United States Constitution)

I.    INTRODUCTION

        This is an action brought pursuant to 42 U.S.C. § 1983 challenging the blatantly

unconstitutional actions of the defendants in refusing to provide pre- or post-deprivation due

process to the plaintiffs regarding the suspension of their Emergency Medical Technician

1

licenses based on false accusations of wrongdoing, and then refusing to afford the plaintiffs any

opportunity to contest their suspensions.

JURISDICTION

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and §1343 in that

this case presents a question of federal law under 42 U.S.C. § 1983 and the Due Process Clause

of the United States Constitution.

II.     PARTIES

1.      The Plaintiff Joseph Foley is an adult resident of Winchester, Massachusetts.

2.      The Plaintiff George-Arthur Robinson is an adult resident of Lexington,

Massachusetts.

3.      The Plaintiff Mark Schofield is an adult resident of Westford, Massachusetts.

4.      The Plaintiff Kenneth Tremblay is an adult resident of Arlington, Massachusetts.

5.      The Plaintiff John Ritchie is an adult resident of Carlisle, Massachusetts.

6.      The Defendant Commonwealth of Massachusetts is a state within the United

States of America.

7.      The Defendant John Auerbach is the Commissioner of the Massachusetts

Department of Public Health, an agency of the Commonwealth.

8.      The Defendant Abdullah Rehayem is the Director of the Office of Emergency

Medical Services, which is an agency within the Department of Public Health which is

responsible for granting and rescinding licenses of Emergency Medical Technicians.

9.      The Defendant Richard Heidlage is the Acting Chief Magistrate of the Division of

Administrative Law Appeals, and independent agency of the Commonwealth, which is charged

with holding adjudicatory hearings.

III.   <u>STATEMENT OF FACTS</u>

a.   <u>Facts relating to Emergency Medical Technicians and the Town of Lexington Fire Department</u>

10.     The Defendant Department of Public Health includes an Office of Emergency Medical Services, which certifies Emergency Medical Technicians ("EMT").

11.      All Massachusetts EMTs are required to participate in periodic training to maintain and renew their certifications.

12.     The training includes a refresher course in Cardio-Pulmonary Resuscitation ("CPR"), a training developed and administered through the American Heart Association.

13.     The Town of Lexington, Massachusetts Fire Department employs fire fighters many of whom are trained and licensed as EMTs.

14.     In or around 2006, the Town of Lexington created and filled the position of Re-Certification Coordinator, with responsibility for tracking the renewal dates of all licenses and certificates for Fire Department personnel, and ensuring that personnel receive the required training.

15.     In recent years, the Re-Certification Coordinator has conducted in-house trainings, announcing those training opportunities to all Department staff.

16.     In early March of 2010, the Re-Certification Coordinator conducted CPR refresher trainings, without announcing the trainings ahead of time or informing EMTs who were absent.

17.     The March 2010 trainings were conducted in order to renew then-valid CPR training cards that expired on June 30, 2010.

18.     The Re-Certification Coordinator then submitted the names of all Lexington Fire Department EMTs as having completed the March CPR trainings, in order to receive training cards showing that they had received the required training.

19.     In early May of 2010, the Town of Lexington conducted an additional set of refresher courses for all its EMTs, and each of the Plaintiffs completed the course.

20.     All of the Plaintiffs were issued new CPR training cards based on the May training sessions, which cards became effective in May of 2010.

    b.  Facts Relating to Joseph Foley

21.     Joseph Foley has worked for the Lexington Fire Department since May 30, 1983 as a Firefighter; has been certified as an EMT since 1981 or 1982, and an EMT-Intermediate since 2008.

22.     Mr. Foley was absent from work due to illness during the day of March 3, 2010, returning to work in the evening.

23.     He did not know at the time that a CPR refresher course had been conducted on that day, as no training was posted or announced or that his name was submitted as having attended such a class, and took no steps to have his name included on the list.

24.     At some later date, CPR cards were distributed, and Mr. Foley received a card to be effective June 30, 2010.

25.     At the time, Mr. Foley questioned why he was receiving a card.

26.     Mr. Foley signed the card based on the representation from the Re-certification Coordinator that he would be provided a refresher course before his current card expired.

27.     On May 1, Respondent did take a refresher course with instructor Scott Morency, including a videotaped course, instruction on a mannequin, and a written test.

4

28.     On May 5, Respondent received a memorandum from the Fire Chief to take another refresher class, and he took the class again on May 12, 2010.

      c.   <u>Facts Relating to George-Arthur Robinson</u>

29.     Plaintiff George-Arthur Robinson has worked for the Lexington Fire Department since January 7, 1985 as a Firefighter, receiving his certification as an EMT in 1980.

30.     On March 4, 2010, Mr. Robinson was absent from work attending to his wife, who was undergoing surgery.

31.     At some time after he returned to work, he learned that the Fire Department had conducted refresher training for CPR in his absence.

32.     Shortly thereafter, Mr. Robinson spoke to the Fire Department's Paramedic Coordinator, Chris Ford, and told him that he had missed the class and would need to make it up.

33.     Mr. Ford responded that it was not a problem, and that the Department would get him into headquarters shortly to make it up.

34.     Over the course of the following weeks, Mr. Robinson looked for the Recertification Coordinator, to reschedule the make-up class, but the Coordinator was absent and Mr. Robinsons was unable to schedule the class.

35.     At some time thereafter, Mr. Robinson's captain handed him a new CPR card, indicating that he has taken the refresher course that he had, in fact, missed.

36.     Mr. Robinson did not know that his name had been submitted as having attended such a class, and took no steps to have his name included on the list.

37.     As Mr. Robinson's current card was not scheduled to expire until June 30, he assumed at the time that he would still have the opportunity to take the refresher course before that expiration.

38.     On May 1, 2010, the Fire Chief announced that some of the cards distributed earlier were in provided in error, and all fire fighters were directed to take a new refresher course, which Mr. Robinson did take.

39.     All of the Plaintiffs received renewed EMT licenses or certifications that were effective on or about January 1, 2010, and were valid until April 1, 2012.

        d.   Facts Relating to Mark Schofield

40.     Mark Schofield has worked for the Lexington Fire Department since August 26, 1996 as a Firefighter, receiving his certification as a EMT in 1982, and an EMT-Intermediate since 2007.

41.     Mr. Schofield was absent from work due to illness starting on January 22, 2010, returning on light duty March 22 and to full duty June 12, 2010.

42.     Mr. Schofield was unaware of any CPR refresher course conducted in the Department in his absence, or that his name was submitted as having attended such a class, and took no steps to have his name included on the list.

43.     On April 29, 2010, after he returned to work on light duty, the Re-certification Coordinator handed Mr. Schofield a CPR card.

44.     Mr. Schofield immediately informed the Coordinator that he had not attended the class, and the Coordinator arranged for him to watch the refresher videotape and take the test that afternoon.

45.     Mr. Schofield completed the course as directed, took the test in the presence of Scott Morency, another CPR instructor who collected the tests when completed.

46.     On May 3, 2010, the Fire Chief informed Mr. Schofield that his name appeared on a list of persons who had not taken the appropriate training, and Mr. Schofield agreed to return the card received on April 29.

47.     Mr. Schofield participated in a second refresher course later that month.

        e.     Facts Relating to Kenneth Tremblay

48.     Mr. Tremblay has worked for the Lexington Fire Department since 1982, serving for 15 years as a Lieutenant and for the past 2.5 years as the Department's Fire Prevention Inspector.

49.     Mr. Tremblay has been certified as an Emergency Medical Technician – Basic since 1981, and has successfully met all the requirements to maintain that certification since that time.

50.     From February 21, 2010 until March 6, 2010, Mr. Tremblay was away from work attending the National Fire Academy in Pennsylvania, returning to work on March 8, 2010.

51.     Mr. Tremblay received no notice of the March refresher courses, and was unaware that they had been conducted until sometime in June of 2010.

52.     At some time thereafter, on a date that Mr. Tremblay cannot recall, the Administrative Assistant to the Fire Department handed Mr. Tremblay a CPR card with his name on it.

53.     Mr. Tremblay did not sign the card, submit it to any person or organization, or otherwise hold it out as a valid certification.

54.     Mr. Tremblay expected to see the Lexington Recertification Coordinator to discuss the card that had been issued, and to ensure that he had all required training, but the Coordinator was absent for extended periods and Respondent was unable to follow up with him.

55.     In early May, Mr. Tremblay became aware of an ongoing investigation of the Recertification Coordinator, and informed the Fire Chief that he had received a card, and could not recall receiving the required training.

56.     On May 14, 2010, Mr. Tremblay completed a CPR refresher training sponsored by the Lexington Fire Department.

57.     On May 14, 2010, Mr. Tremblay was issued a new CPR card, and returned the unsigned card issued to him before.

      f.   Facts Relating to Plaintiff John Ritchie

58.     Plaintiff John Ritchie has been employed as a Fire Fighter by the Lexington Fire Department since 1994.

59.     Mr. Ritchie was first certified as an Emergency Medical Technician – Basic in 1992, and then as an Emergency Medical Technician – Paramedic in 2007, and has successfully met all the requirements to maintain the respective certifications since that time.

60.     As of early 2010, Mr. Ritchie had a valid CPR /ALS certification and possessed a CPR certification that was scheduled to expire on June 30, 2010.

61.     In March of 2010 Mr. Ritchie was absent from work due to a work-related injury on the day the Fire Department conducted a CPR refresher course.

62.     Without Mr. Ritchie's knowledge or consent, the Lexington Fire Department submitted a course roster that apparently reflected that he had attended a refresher course.

63.     The Lexington Fire Department received a CPR card reflecting his completion of a CPR refresher course, and proffered that card to him.

64.     Mr. Ritchie did not accept the proffered card until sometime later, after he was assured that he would, in fact, receive the refresher training.

8

65.     Mr. Ritchie took immediate steps to inform the appropriate Fire Department officials that the card was issued in error and that he would need to complete a refresher course prior to his card's expiration, on June 30, 2010.

66.     On or about April 29, 2010, Mr. Ritchie was serving on light duty and was instructed by the Lexington Fire Department's Re-certification Coordinator to take the CPR class while on duty that day in order to complete the requirement.

67.     Mr. Ritchie took the refresher course on that day, viewing the training on a lap top computer, and then completed the re-certification test and handed it in to instructor Scott Morency.

68.     On or about May 1, 2010, the Lexington Fire Chief announced that some of the cards distributed earlier were provided in error, and directed all Lexington Fire Fighters to take a new refresher course.

69.     Mr. Ritchie took the new refresher course on May 12, 2010 and received a new CPR card based on that course prior to the expiration of his previous card on June 30, 2010.

g.     Facts Relating to the Defendants' Suspension of Plaintiffs' certifications

70.     On or about June 16, 2010, the Director of the Office of Emergency Management Services, Abdulla Rehayem, sent essentially identical letters to each of the Plaintiffs with an enclosed document, signed by Commissioner John Auerbach, that was titled "Notice of Agency Action: Immediate Suspension and Proposed Temporary Revocation of Certification as an Emergency Medical Technician."

71.     The letters and attachments are hereby attached to this complaint and incorporated herein by reference as Attachment 1 (Foley), Attachment 2 (Robinson), Attachment 3 (Schofield) Attachment 4 (Tremblay) and Attachment 5 (Ritchie).

72.     The letter from Director Rehayem informed the Plaintiffs that their certifications were suspended effective July 1, directed them to return their certification cards to the Department to its counsel, Sondra Korman, and further informed them of their rights to appeal the action and request an adjudicatory hearing.

73.     The documents titled "Notice of Agency Action: Immediate Suspension and Proposed Temporary Revocation of Certification as an Emergency Medical Technician" relating to each Plaintiff contained essentially identical allegations, set forth in numbered paragraphs, and attached a document titled "Complaint Investigation report # 10-0414," which related to an investigation of Lexington Fire Department Recertification Coordinator, but which did not include any specific allegations or information concerning the Plaintiffs.

74.     In paragraph 5 of the Notices of Agency Action, the Defendant John Auerbach alleges as follows, referring to the Plaintiffs in this action as "respondent":

> In order to maintain eligibility to be employed as an EMT-Paramedic, Respondent submitted a purported current training card to the Ambulance Service which reflected successful completion of a CPR/ACLS course conducted by Mark Culleton, an AHA-certified training instructor.

75.     In paragraph 6 of the Notices of Agency Action, the Defendant John Auerbach alleges that the Lexington Re-certification Coordinator:

> … never conducted such a training and the training card the Respondent submitted to the Ambulance Service as proof of continued eligibility to function as an EMT was invalid.

76.     In fact, none of the Plaintiffs submitted the cards provided to them to the Lexington Fire Department or to any other person or agency for any purpose.

77.     In paragraph 7 of the Notices of Agency Action, the Defendant John Auerbach alleges as follows, referring to the Plaintiffs in this action as "respondent":

> Respondent admitted to Department investigators the Respondent did not attend such training. Respondent further admitted to receiving the training card from the AHA-

10

certified training center based on fictitious rosters submitted by [Lexington re-
certification Coordinator] Culleton and using this invalid training card as documentation
of competency in current CPR and/or ACLS skills.

78.     In fact, the Department never interviewed the Plaintiffs or in any way offered

them the opportunity to respond to the allegations it made against them, and none of the

Plaintiffs admitted to any of the facts alleged to have been admitted in Paragraph 7 of the Notice

of Agency Action.

79.     Contrary to the allegations set forth in the Notice of Agency Action signed by

Defendant Auerbach, at no time did any of the Plaintiffs rely on any invalid certification,

represent that he had attended any training that he had not attended, make any statements that

were misleading or untruthful, or in any way violate the law.

80.     Contrary to the allegations set forth in the Notice of Agency Action signed by

Defendant Auerbach, at no time did any of the Plaintiffs, in order to maintain his eligibility to be

employed as an EMT or for any other reason, submit a purported current training card to any

ambulance service or other person, government agency or other organizational entity which

reflected successful completion of a CPR/ACLS course conducted by the Lexington Re-

certification Coordinator or any other person.

81.     Contrary to the allegations set forth in the Notice of Agency Action signed by

Defendant Auerbach, at no time did any of the Plaintiffs speak to any Department Public Health

investigator, much less admit to any such person that he had taken any steps to receive an invalid

training card; to avoid his training obligations; or to use any invalid training card as

documentation of competency in current CPR and/or ACLS skills.

82.     Contrary to the allegations set forth in the Notice of Agency Action signed by

Defendant Auerbach, at no time did any of the Plaintiffs disregard the minimum eligibility

standards governing emergency medical care and continued employment as an EMT, or in any other way take steps that would have endangered patient health and safety or violated the public trust.

83.      All of the Plaintiffs complied with the instruction to return their certification cards, and as a result were suspended from working as EMTs from July 1 until the suspension was lifted and their cards submitted to the Lexington Fire Department, on or after August 26, 2010.

84.      As a result of the suspensions of their certifications, Plaintiffs lost income that they were entitled to receive as EMTs pursuant to their collective bargaining agreement, and were vilified in the local press.

85.      The Notices of Agency Action issued against the Plaintiffs were released to the media, and the allegations made against them were published in reports that identified them by name.

86.      Plaintiffs appealed the Defendants' actions and requested adjudicatory hearings to clear their names and restore their certifications, pursuant to 801 C.M.R. 1.01 (6)(b)and their cases were docketed with the Commonwealth's Division of Administrative Appeals.

87.      On July 23, 2101, the Department voluntarily withdrew its agency action against Kenneth Tremblay, stating that "upon further review, Petitioner has determined that the Department's action is no longer warranted against this Respondent." and asked the Division of Administrative Law Appeals to remove the matter from its docket.

88.      The Town of Lexington subsequently reimbursed Mr. Tremblay for his lost earnings, but Mr. Tremblay has never had the opportunity to be heard in order to clear his record or restore his reputation.

12

89.     On August 19, 2010, 50 days after the start of the suspension of Plaintiffs Foley, Robinson, Schofield, and Ritchie, the Department moved to amend its Agency Action to change its allegations, and reduced its proposed revocation of the certifications to 45 days.

90.     On August 25, 2010, the Department filed a document with the Division of Administrative Appeals withdrawing its Notice of Agency Action for the suspension and temporary revocation of the certifications of Plaintiffs Foley, Robinson Schofield and Ritchie, and asking the Division to remove these cases from its docket.

91.     Defendants then returned the suspended certification cards to Plaintiffs Foley, Robinson, Schofield and Ritchie.

92.     Plaintiffs Foley, Robinson, Schofield and Ritchie objected to the dismissal of their appeals, asserting that the Department was without legal authority to dismiss an appeal commenced by the Plaintiffs, and that such action would violate Due Process.

93.     The Division of Administrative Appeals nonetheless dismissed the appeals.

## COUNT I

### (42 U.S.C. § 1983: Property Interest)

94.     The actions of the Defendants, as set forth above, constitute a deprivation of Plaintiffs' property (their EMT licenses) without affording them the opportunity to be heard, all in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. This claim is asserted pursuant to 42 U.S.C. ¶ 1983.

## COUNT II

### (42 U.S.C. § 1983: Liberty Interest)

95.     The actions of the Defendants, as set forth above, constitute a deprivation of Plaintiffs' liberty interests, by issuing complaints that included false accusations of wrongdoing

by the Plaintiffs, which accusations were publicized their communities and thereby caused irreparable harm to their reputations, without providing notice of the allegations against them or the opportunity to be heard in their own defense, all in violation of substantive Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution. This claim is asserted pursuant to 42 U.S.C. ¶ 1983.

COUNT III

(42 U.S.C. § 1983: Pre-Due Process Suspension)

96.     By and through these actions, the Defendants further violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution by temporarily suspending Plaintiffs' certifications before providing any due process rights despite the fact that the Plaintiffs were all, at the time, properly trained and certified, and the Defendants knew that their continued certification did not pose any threat to the public.  This claim is asserted pursuant to 42 U.S.C. ¶ 1983.

WHEREFORE, this Court is requested to enter an appropriate declaratory judgment, as well as preliminary and permanent injunctive relief:

1.  Declaring that the Defendants suspension of the Plaintiffs' certifications without due process were unlawful and that the Defendants' accusations against the Plaintiffs were unfounded;

2.  Ordering the Defendants to correct any record of the suspension to reflect the fact that the suspensions were imposed without due process and that the Defendants' accusations against the Plaintiffs were unfounded.

3.  Granting the Plaintiffs reasonable attorneys fees and costs pursuant to 42 U.S.C. §1983.

Respectfully submitted

JOSEPH FOLEY, GEORGE-ARTHUR
ROBINSON, MARK SCHOFIELD,  KENNETH
TREMBLAY and JOHN RITCHIE,
By and through their undersigned attorneys


/s/   *Harold L. Lichten*
Harold L. Lichten BBO# 549689
Timothy Belcher BBO# 678284
LICHTEN & LISS-RIORDAN, PC
100 Cambridge St., 20th floor
Boston, MA 02114
(617) 994-5800
tbelcher@llrlaw.com

Dated: October 21, 2010

15